[Cite as *In re D.S.*, 2024-Ohio-3175.]

STATE OF OHIO    )          IN THE COURT OF APPEALS
                 )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: D.S.                 C.A. No.    31085


                            APPEAL FROM JUDGMENT
                            ENTERED IN THE
                            COURT OF COMMON PLEAS
                            COUNTY OF SUMMIT, OHIO
                            CASE No.    DN 23 01 0039


DECISION AND JOURNAL ENTRY

Dated: August 21, 2024

CARR, Judge.

{¶1}    Appellant, R.N. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother is the biological mother of D.S., born January 19, 2023. The child's father, T.W., did not appeal from the trial court's judgment.

{¶3}    The day after D.S. was born, CSB filed a complaint to allege that she was an abused, neglected, and dependent child because of concerns that Mother abused drugs or alcohol while she was pregnant with the child and her history of involvement with CSB and the juvenile court based on her inability to care for several older siblings of this child because of her cognitive delays, and mental health and substance abuse problems.

{¶4} Mother had been diagnosed with moderate intellectual disability, as well as with bipolar disorder and anxiety, but she did not want to take psychiatric medications to stabilize her moods. She did not actively engage in case plan services in the prior cases involving her older children and, at different points in time, ultimately lost custody of all of them. As CSB would later clarify, Mother's parental rights were involuntarily terminated as to five older siblings of this child, and two of the child's older siblings were placed in the legal custody of their father.

{¶5} After it filed the complaint in this case, CSB later moved for an order to excuse it from making reasonable efforts to reunify D.S. with Mother because of the prior involuntary terminations of Mother's parental rights to siblings of D.S. In its motion, CSB asserted that Mother's parental rights had been involuntarily terminated by the Summit County Juvenile Court as to five older siblings of D.S. Those involuntary terminations were journalized on August 15, 2020, and February 2, 2021.

{¶6} Mother appeared at the adjudicatory hearing with her trial counsel. CSB agreed to withdraw its allegations of abuse and neglect, and Mother and the alleged father stipulated to the agency's allegations of dependency. The trial court adopted the magistrate's dependency adjudication, and no party filed objections.

{¶7} Following a dispositional hearing, the trial court placed D.S. in the temporary custody of CSB. The trial court adopted the case plan as an order of the court, but also granted CSB's motion for a reasonable efforts bypass, excusing it from making reasonable efforts to reunify D.S. with Mother based on the prior involuntary terminations of her parental rights as to siblings of D.S. *See* R.C. 2151.419(A)(2)(e).

{¶8} Despite the reasonable efforts bypass, CSB provided Mother with reunification services under the case plan. CSB assigned the same caseworker to this case who had worked

with Mother in the cases of five of her older children. At the beginning of the case, Mother engaged in some mental health and drug treatment services, but her participation dropped off as the case progressed. The treatment providers later terminated Mother's services for noncompliance. Mother did not submit to all the drug tests that CSB required and, when she did submit samples for testing, she continued to test positive for illegal drugs. Beginning in October 2023, Mother refused all further requests for drug testing.

{¶9} On December 13, 2023, CSB moved for permanent custody of D.S. Following an evidentiary hearing, the trial court terminated parental rights and placed D.S. in the permanent custody of CSB. Mother appeals and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS WITHOUT COMPLYING WITH THE INDIAN CHILD WELFARE ACT AT THE PERMANENT CUSTODY HEARING.

{¶10} Mother's first assignment of error is that the trial court erred by terminating Mother's parental rights to D.S. because "at no point before, during, or even after the hearing did the trial court ever inquire as to whether or not D.S. had any Native American ancestry" as required by the Indian Child Welfare Act ("ICWA") set forth in 25 U.S.C. Ch. 21, Subchapter I. Mother did not raise this issue in the trial court, so she has forfeited all but plain error. *See In re T.B.*, 2014-Ohio-4040, ¶ 12 (9th Dist.). Mother has failed to argue or demonstrate plain error on appeal.

{¶11} In fact, at the adjudicatory hearing, Mother stipulated to the facts alleged in the complaint. The complaint included a request that the trial court inquire into the applicability of ICWA in this case, but the final enumerated paragraph of CSB's complaint alleged that "[CSB] has no reason to believe that this is an Indian child." After Mother stipulated that ICWA was not

applicable to D.S., there was no need for CSB or the trial court to have delved into the matter further.

{¶12} Consequently, Mother has failed to demonstrate any error, much less plain error, in the lack of further inquiry into ICWA at the permanent custody hearing. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY EVIDENCE BEYOND A REASONABLE DOUBT AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Mother's second assignment of error is premised on this Court finding merit in her first assignment of error. Specifically, she maintains that, because the trial court did not rule out the applicability of ICWA to D.S., it was required to apply the heightened evidentiary standard set forth in ICWA to CSB's permanent custody motion. *See* 25 U.S.C. 1912(f). Because this Court found no merit in Mother's first assignment of error, it need not address her related second assigned error.

{¶14} Aside from asserting that the trial court should have applied a heightened evidentiary burden to CSB's motion, Mother has not developed an argument about the evidence presented at the hearing. Because she has asserted that the trial court's permanent custody judgment was against the manifest weight of the evidence, however, this Court will address that argument under the appropriate evidentiary standard. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a

consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶15} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶16} On the first prong of the permanent custody test, the trial court found that D.S. could not or should not be returned to Mother's custody because Mother previously had her parental rights involuntarily terminated as to older siblings of D.S. and Mother failed to prove, by clear and convincing evidence that, "notwithstanding [those] prior termination[s], the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(11).

{¶17} At the permanent custody hearing, CSB supported its allegations under R.C. 2151.414(E)(11) with certified records from the juvenile cases involving some of Mother's older children. Those records included a consolidated final judgment dated August 15, 2020, in which the juvenile court terminated Mother's parental rights to four older siblings of D.S. Mother did not present any evidence to demonstrate that, despite those prior terminations, she could "provide

a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11). Consequently, the evidence before the trial court established that Mother could not provide D.S. with a safe and stable permanent home.

{¶18} Next, the trial court was required to find that permanent custody was in the best interest of the child. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, her wishes, the custodial history of the child, her need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). As explained above, the trial court found that R.C. 2151.414(E)(11) applied to the facts of this case and it was required to consider the prior involuntary terminations of Mother's parental rights again in its best interest determination.

{¶19} Throughout this case, Mother visited D.S. consistently and witnesses testified that her interaction with the child was appropriate. The sole interaction she ever had with this child, however, was limited to weekly, two-hour visits that were closely supervised because of concerns about Mother's ongoing, untreated mental health and substance abuse problems.

{¶20} At the time of the hearing, D.S. was only 14 months old, so she was too young to express her own wishes about where she wanted to live. The guardian ad litem opined that permanent custody was in the best interest of the child. She explained that, although she believed that Mother loved D.S., she did not believe that Mother could provide for the daily needs of a young child. She pointed to Mother's failure to adequately address her parenting problems in this

and several separate juvenile cases and her lack of a support system of reliable family or friends. The guardian ad litem also emphasized that Mother had never spent more than two hours with D.S. and had always seen her in a supervised setting, in which Mother had the assistance of CSB staff.

{¶21} The entire custodial history of D.S. had been spent in the custody of CSB. During that 14-month period, CSB moved her out of her first foster home after several months because of problems with another child in the home. After finally adjusting to her second foster home, D.S. needed a legally secure permanent placement. Neither parent was prepared to provide her with a stable permanent home and CSB had been unable to find a suitable relative who was willing to do so. The trial court reasonably concluded that a legally secure permanent placement would be achieved by placing D.S. in the permanent custody of CSB.

{¶22} Finally, the trial court was again required to consider that Mother's parental rights to older siblings of D.S. had been involuntarily terminated and she failed to prove, by clear and convincing evidence that, "notwithstanding [those] prior termination[s], the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(D)(1)(e); 2151.414(E)(11). Mother presented no evidence in this case to demonstrate that, during the three and a half years since her parental rights were terminated in those cases, she had resolved any of the same parenting problems. Mother had not engaged in consistent treatment for her mental health or substance abuse problems; she did not demonstrate even a short period of sobriety; and she lacked stable income, housing, or an adequate support system to enable her to safely raise her young child.

{¶23} The record demonstrates that the trial court did not lose its way by terminating Mother's parental rights and placing D.S. in the permanent custody of CSB. *See Eastley* at ¶ 20. Mother's second assignment of error is overruled.

III.

{¶24} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.